IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL THOMPSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; THEODORE ABREU; THOMAS BZOSKIE; HARRY NEWMAN; JEROME PRICE; MARGARET HANNA; RONALD DAVIS; and DOES 1 to 50, inclusive,<br><br>　　　　Defendants.<br>_____/ | No. 16-cv-03415-CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL DEFENDANTS' MOTION TO DISMISS CLAIMS IN SECOND AMENDED COMPLAINT<br><br>(Docket No. 94) |

Defendants Thomas Bzoskie, Harry Newman, Jerome Price, Margaret Hanna and Ronald Davis (the Individual Defendants) move to dismiss Plaintiff Randall Thompson's first and second claims in the second amended complaint (2AC).[1]  Plaintiff opposed the motion and the Individual Defendants filed a reply.  Having considered the parties' papers, the Court grants in part and denies in part the Individual Defendants' motion to dismiss Plaintiff's two claims for relief against them.

---

[1] Defendant Theodore Abreu, who is represented by separate counsel, did not join in the motion to dismiss.  Defendant Abreu is not included in references in this order to the Individual Defendants, unless specifically noted.

BACKGROUND

The following facts are taken from the 2AC and assumed to be true for purposes of this motion. Plaintiff was incarcerated at various prisons operated by the California Department of Corrections and Rehabilitation (CDCR) from May 2014 through March 2015. In August 2014, while he was incarcerated at Deuel Vocational Institute (DVI), Plaintiff was issued a Medical Classification Chrono and a Comprehensive Accommodation Chrono for "severe knee damage." Id. ¶ 13. The chronos indicated that Plaintiff was to be housed in a ground floor cell, was not to use the stairs and was restricted to limited duty.

Despite the chronos, Defendant Theodore Abreu, a correctional officer at DVI, repeatedly ordered Plaintiff to shower on the second floor even though showers were available on the ground floor. On or about September 3, 2014, after being ordered to shower on the second floor for about the fourth time, Plaintiff fell from about the middle of staircase and tumbled down the metal steps while descending. He immediately complained of pain in his back, neck, knees and shoulder but had to wait for over thirty minutes before medical personnel arrived with a gurney. The person who arrived was unable to lift him, so Plaintiff had to stand and climb onto the gurney, which "caused him an extreme amount of pain." Id. ¶ 16.

Plaintiff was then transported to the DVI infirmary, where x-rays were taken. No one read the x-rays, but Plaintiff was told that he had no acute fractures, given a Motrin shot and sent back to his cell. He was scheduled to see a doctor six days later. After Plaintiff returned to his cell, Abreu told him "in a very

2

stern and threatening voice 'You know I didn't order you to go up the stairs.'" Id. ¶ 18.

Plaintiff was unable to walk to the dining hall for dinner that evening and his request to be fed in his cell was refused. Other inmates helped him walk to the dining hall the next morning but he collapsed when returning to his cell. He returned to the infirmary, where Defendant Dr. Harry Newman told him he needed to "tough it out" and refused to give him a wheelchair or crutches. Id. ¶ 19. A worker in the infirmary told Plaintiff that, if he fell down again, "We're not going to come get you. You're just gonna lay there." Id.

Plaintiff alleges that over the next seven weeks, he filed repeated requests for additional medical treatment and asked for help with his condition and pain on a daily basis. "He was seen several times by Dr. Newman, who began to recognize that he was in serious pain, prescribed pain medication and told plaintiff he had a fracture in his lower back and had resulting nerve damage, although Dr. Newman did not document that statement." Id. ¶ 21. Dr. Newman refused to order additional x-rays or an MRI. He told Plaintiff that it was not his decision, that he had "a boss to answer to," and that if "you don't have broken bones, you're out of luck." Id. Plaintiff alleges that Dr. Newman was acting at the direction of Defendant Bzoskie, the Chief Medical Officer (CMO) at DVI, "who reviewed the 602's filed by Plaintiff and was therefore aware of Plaintiff's serious medical condition, substantial pain and Plaintiff's request for further medical services, and directed the denial of those requests." Id. ¶ 22.

3

Plaintiff alleges that, because of his continued complaints and documentation of the inadequacy of his medical care, he was transferred without notice, in the middle of the night, to San Quentin State Prison on October 21, 2014. The transfer occurred during his administrative appeal regarding a referral to see an orthopedic specialist, and was used by Michael D. Fox, M.D., who is not a party to this action, as a basis to deny the appeal. Plaintiff was encouraged to request services at San Quentin, but his appeal of the previous denial was not transferred.

Upon his arrival at San Quentin, Plaintiff's "vitals were taken," but he was not examined regarding his complaints. Id. ¶ 24. Two and a half weeks after the transfer, Plaintiff saw Individual Defendant Nurse Practitioner Margaret Hanna for approximately three minutes. Id. N.P. Hanna did not examine Plaintiff, but did a cursory review of his records and then let his pain medication prescription expire, telling him that she believed he was exaggerating his condition and leaving him without pain relief. Plaintiff requested a specialist referral, and N.P. Hanna denied the request and sent him back to his cell.

At San Quentin, Plaintiff continued to seek medical treatment, but "appointments were more difficult to obtain and set much further out than at DVI." Id. ¶ 25. He was given a pillow, physical therapy, and a "TENS unit for his back," but did not get additional x-rays or any magnetic resonance imaging (MRI). Id. ¶ 29. Physical therapy brought him some relief, and his physical therapist told him that he had a "severe neck injury and a lower back injury, which needed further treatment and probably surgery." Id. N.P. Hanna advised him to use the TENS unit on his neck for

4

pain relief, but only shrugged and walked away when Plaintiff pointed out a warning label against use of the TENS unit on the neck.

In February 2015, Plaintiff was transferred to Avenal State Prison, where he remained until his release in March 2015. After his release, Plaintiff sought medical attention. His doctor ordered a MRI and was surprised that he had not previously received a MRI. The MRI "revealed that Plaintiff has severe tears of the rotator cuff in his right shoulder with musculotendinoligamentous sprain/strain and a bulging disc in his neck" as well as "significant facetarthropathy and mild neuroforaminal narrowing in his lumber spine." Id. ¶ 30. He was referred to an orthopedist and treated with injections and "is a surgical candidate if the conservative treatment ultimately is not effective." Id.

Plaintiff alleges two claims for relief against all Individual Defendants. First, he claims deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983. Second, he claims a conspiracy to violate his civil rights, in violation of 42 U.S.C. § 1985. The Individual Defendants move to dismiss both of these claims.

On August 23, 2016, the Court denied Defendant CDCR's motion to dismiss Plaintiff's third cause of action, for disability discrimination in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. On June 7, 2017, the Court granted the Individual Defendants' motion to dismiss the two claims against them in the first amended complaint (1AC) and

granted leave to amend. Defendants CDCR and Abreu filed an answer to the 1AC on May 29, 2017, but have not filed an answer to the 2AC.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Twombly, 550 U.S. at 555. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice. Id. at 1061. However, the court need not accept legal conclusions, including threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

6

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). The court's discretion to deny leave to amend is "particularly broad" where the court has previously granted leave. Chodos v. West Publ'g Co., 292 F.3d 992, 1003 (9th Cir. 2002).

## DISCUSSION

### I. Shotgun Pleading

The Individual Defendants contend that Plaintiff's first and second claims for relief should be dismissed as "shotgun pleading," because he pleads multiple claims and does not identify which specific facts are allocated to which claim. See, e.g., Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011) ("the complaint grouped multiple defendants together and failed to 'set out which of the defendants made which of the fraudulent statements/conduct.'"). However, "a complaint does not employ impermissible shotgun pleading just because it re-alleges by reference all of the factual paragraphs preceding the claims for relief." Sec. & Exch. Comm'n v. Bardman, 216 F. Supp. 3d 1041, 1051 (N.D. Cal. 2016). The Court addresses below whether the facts plead by Plaintiff are sufficient to state each claim as to

7

each Individual Defendant.  However, the 2AC is not so lacking in specifics as to be dismissed wholesale as a "shotgun pleading."

## II.   Deliberate Indifference

Title 42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See, e.g., Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104).  Examples of indications that a prisoner has a serious need for medical treatment include the existence of an injury that a reasonable

8

doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities or the existence of chronic and substantial pain. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060.

Indifference may exist when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care. See id. at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim); Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (plaintiff stated a claim for deliberate indifference where his failure to receive prescribed treatment was due to defendant's failure to request the treatment properly and then unexplained cancellation of a second treatment request).

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. See, e.g.,

9

Toguchi v. Chung, 391 F.3d 1051, 1057, 1060-61 (9th Cir. 2004). Likewise, a "difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 511 U.S. at 837).

A. Fourteenth Amendment

Plaintiff stipulates that he alleges a claim under the Eighth Amendment as made applicable to the States under the Fourteenth Amendment, but does not allege a separate substantive due process claim under the Fourteenth Amendment. Opp. at 1. Accordingly, the Court does not reach the Individual Defendants' argument that Plaintiff cannot state a separate claim under the Fourteenth Amendment.

B. Dr. Newman and Dr. Bzoskie

Plaintiff claims deliberate indifference by two doctors at DVI: Dr. Newman, who was his treating physician, and CMO Bzoskie. These Defendants argue that Plaintiff again fails to allege that their acts or omissions evince subjectively deliberate indifference to Plaintiff's objectively serious medical needs.

Reviewing the allegations of the 2AC as a whole, the Court finds that Plaintiff has plead sufficient facts to state a claim

1 against Dr. Newman and CMO Bzoskie.  Plaintiff alleges that these
2 Defendants denied him additional treatment, a specialist referral
3 and additional diagnostic testing, despite knowing of Plaintiff's
4 objectively serious medical condition and pain.  He alleges that
5 initial denials of treatment were not based on any review of his
6 x-rays and that later, Dr. Newman made statements to him that
7 implied that DVI had a policy of not providing additional
8 diagnosis or treatment unless an inmate had broken bones.  See
9 Colwell v. Bannister, 763 F.3d 1060, 1068 (9th Cir. 2014) (holding
10 that a policy of denying cataract surgery in one eye to inmates
11 with another good eye would be "the very definition of deliberate
12 indifference").  He alleges that Dr. Newman was acting at the
13 direction of Dr. Bzoskie, who actually discussed and acquiesced in
14 the denials of care after being "provided information sufficient
15 to inform [him] of Plaintiff's serious medical condition and his
16 significant pain as well as and [sic] his regular requests to see
17 a specialist and for further diagnostic testing."  2AC ¶ 26; see
18 also id. ¶ 21-22.

19 The alleged statements by Dr. Newman, as plead, are open to
20 multiple interpretations other than the expression of a policy of
21 deliberate indifference and direct involvement of CMO Bzoskie in
22 the denial of care.  In the Ninth Circuit, however, if "there are
23 two alternative explanations, one advanced by defendant and the
24 other advanced by plaintiff, both of which are plausible,
25 plaintiff's complaint survives a motion to dismiss under Rule
26 12(b)(6).  Plaintiff's complaint may be dismissed only when
27 defendant's plausible alternative explanation is so convincing
28 that plaintiff's explanation is implausible."  Starr v. Baca,

11

652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis in original). Plaintiff's allegations are not particularized, but they are sufficient to provide Dr. Newman and CMO Bzoskie with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (omission in original)).

    C.   Nurse Practitioner Hanna

Plaintiff alleges that during his three minutes with N.P. Hanna, she performed a cursory review of his records on the computer and then stated her subjective belief that he was "faking and exaggerating his condition." 2AC ¶ 24. Plaintiff further alleges that her belief that he was "'faking' was not based on anything Plaintiff stated to Hanna and could only have come from medical personnel at DVI." Id. Plaintiff alleges no facts supporting a claim that it was "medically unacceptable under the circumstances" for a nurse practitioner to rely on medical records created by treating doctors at DVI. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

Plaintiff alleges that N.P. Hanna's refusal to refill his pain medication prescription, which appears to have occurred in November 2014, left him "without pain relief." 2AC ¶ 24. He also alleges, however, that at San Quentin in 2014, he was given a pillow, a TENS unit and physical therapy that provided him with some relief. Plaintiff has not alleged facts supporting a claim that N.P. Hanna or other medical personnel at San Quentin chose his alternative treatment "in conscious disregard of an excessive risk" to his health. Toguchi, 391 F.3d at 1058.

12

1    Plaintiff's allegation relating to N.P. Hanna's discussion
2 with him about his TENS unit is insufficient to plead more than
3 negligence and is not, in any event, alleged to have resulted in
4 any harm to Plaintiff.
5    Finally, Plaintiff alleges no facts that plausibly support
6 his claim that N.P. Hanna was involved in the decision to transfer
7 him to San Quentin.
8    D.   Wardens Price and Davis
9    Finally, Plaintiff names Warden Price of DVI and Warden Davis
10 of San Quentin as Defendants.  The Supreme Court has explained
11 that, because § 1983 suits do not allow for the imposition of
12 vicarious liability, "a plaintiff must plead that each Government-
13 official defendant, through the official's own individual actions,
14 has violated the Constitution." Iqbal, 556 U.S. at 676.  However,
15 "a plaintiff may state a claim against a supervisor for deliberate
16 indifference based upon the supervisor's knowledge of and
17 acquiescence in unconstitutional conduct by his or her
18 subordinates." Starr, 652 F.3d at 1207.
19    Plaintiff alleges generally that the wardens (and all other
20 Defendants) participated in staff meetings where they would have
21 been informed of Plaintiff's medical condition, pain and requests
22 for additional treatment.  He further alleges that all Defendants
23 "participated in and/or directed the repeated denials and delays
24 of treatment and/or learned of the denials and delays and failed
25 to act to prevent them, and/or acted with deliberate indifference
26 to Plaintiff's serious medical condition."  2AC ¶ 26.  Finally, he
27 alleges that the approval of the wardens was required for his
28 transfer to San Quentin.  These boilerplate, group claims on

13

information and belief lack either plausibility or factual allegations to support them with regard to the wardens. See Twombly, 550 U.S. at 555 (plaintiff must provide "more than labels and conclusions"). Even if the wardens were aware that Plaintiff had injuries and wanted additional treatment, that does not, without more, support the plausible inference that they subjectively knew that the treatment Plaintiff was receiving was deficient, only that Plaintiff was dissatisfied with it.

Additionally, Plaintiff alleges that Warden Davis "was the Warden or Acting Warden of San Quentin from at least December of 2014 until Plaintiff's transfer to Avenal." Id. ¶ 26. In other words, Davis was not yet the warden at the time of Plaintiff's transfer or even at the time of his initial appointment with N.P. Hanna. Plaintiff alleges no individual actions by Davis before his time as warden. Plaintiff's claim against Davis is not plausible for this additional reason. Iqbal, 556 U.S. at 682-83.

III. Conspiracy to Violate Civil Rights

Defendants contend that Plaintiff fails to state a claim under 42 U.S.C. § 1985(3) because the 1AC does not sufficiently allege that any defendant was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971); see also Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993). Plaintiff responds that his claim under § 1985(3) is based on class-based animus against individuals with disabilities. For the purpose of this motion to dismiss, the Individual Defendants have not disputed that Plaintiff is an individual with a disability. Mot. at 21.

14

The Ninth Circuit has explained that, to state a cause of action under § 1985(3), a plaintiff must allege: "(1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980) (citing Griffin, 403 U.S. at 102-03); see also Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1141 (9th Cir. 2000) (holding that § 1985(3) "prohibits two or more persons from conspiring to deprive any person or class of persons of the equal protection of the law").

"The Supreme Court has not defined the parameters of a 'class' beyond race," but federal courts must exercise restraint in extending § 1985(3) beyond racial prejudice. Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002). Section "1985(3) is not to be construed as a general federal tort law." Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511, 1518-19 (9th Cir. 1987); see also Griffin, 403 U.S. at 101 (Congress did not intend § 1985(3) to reach "all tortious, conspiratorial interferences with the rights of others"). The Ninth Circuit has explained:

> Although both § 1983 and § 1985 are civil rights statutes, they have different origins. Section 1983 is based upon the fourteenth amendment and thus concerns deprivations of rights that are accomplished under the color of state law. Section 1985, on the other hand, is derived from the thirteenth amendment and covers all deprivations of equal protection of the laws and equal privileges and immunities under the laws, regardless of its source.

Gillespie, 629 F.2d at 641 (citations omitted).

15

In the Ninth Circuit, the "rule is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (internal quotation marks omitted). More specifically, the Court requires "either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." Id.

As discussed more fully in the Court's June 7, 2017 order granting the Individual Defendants' motion to dismiss the 1AC, whether a § 1985(3) claim may be based on class-based animus against the disabled is a close question. The Court need not reach it to decide the pending motion to dismiss, however. This is because even if Plaintiff is a member of a class that is cognizable under § 1985(3), he still must plead sufficient facts to allege a conspiracy to deprive him of the equal protection of the laws because of invidious animus against him as a member of that class. See, e.g., Scott v. Rosenberg, 702 F.2d 1263, 1270 (9th Cir. 1983) (holding that plaintiff "failed to allege any facts from which we might infer a class-based animus"); see also Bray, 506 U.S. at 269-70 ("The record in this case does not indicate that petitioners' demonstrations are motivated by a purpose (malevolent or benign) directed specifically at women as a class.").

16

Assuming, without deciding, that a § 1985(3) claim may be based on class-based animus against individuals with disabilities, Plaintiff has not alleged facts supporting a plausible inference that that any of the five Individual Defendants conspired to deprive him of the equal protection of the laws, much less that such a conspiracy was based on class-based invidiously discriminatory animus due to his alleged disability. Plaintiff alleges only that he was dissatisfied with his medical treatment, that he pursued his right to that treatment and that he was transferred to San Quentin with all Defendants' approval "to silence and cover up Plaintiff's complaints." 2AC ¶ 27. This is accompanied by the assertion that these actions "evidence a pattern and practice constituting at a minimum an implicit understanding to deny Plaintiff needed medical care and relief from substantial pain." 2AC ¶ 46; see also id. ¶ 47.

As explained in the Court's prior order, even if a § 1985(3) claim may be based on class-based animus against the disabled, every act of deliberate indifference to medical needs is not necessarily also a violation of § 1985(3). Plaintiff's allegation of conspiracy lacks factual specificity or plausibility. See Johnson v. State of California, 207 F.3d 650, 655 (9th Cir. 2000). Moreover, his claim that the Individual Defendants' actions were motivated by class-based discrimination against individuals with disabilities is not plausible in light of "obvious alternative explanations" including individual medical negligence, skepticism of his complaints, deliberate indifference or even retaliation directed at Plaintiff individually. Iqbal, 556 U.S. at 682-83.

17

CONCLUSION

For the foregoing reasons, the Court GRANTS in part and denies in part the motion to dismiss Plaintiff's first and second claims for relief in the 2AC (Docket No. 94), as follows.

The Court GRANTS the motion to dismiss Plaintiff's first and second claims for relief against Defendants Margaret Hanna, Ronald Davis, and Jerome Price. Thus, they are no longer Defendants in this action.

The Court DENIES the motion to dismiss Plaintiff's first claim for relief against Individual Defendants Harry Newman and Thomas Bzoskie.

The Court GRANTS the motion of Defendants Newman and Bzoskie to dismiss Plaintiff's second claim for relief against them. The second claim for relief is therefore DISMISSED as to all five Individual Defendants, but remains pending as to Defendant Abreu.

The Court DENIES further leave to amend the dismissed claims. Plaintiff has already had two opportunities to amend these claims in response to the Individual Defendants' arguments, including one opportunity granted by the Court in the June 7, 2017 order of dismissal. The Court finds that further leave to amend would be futile in light of the facts plead in the 2AC.

Defendants Newman and Bzoskie shall file an answer to the remaining claim against them in the 2AC within fourteen days after the date of this order.

The case management conference remains scheduled for October 3, 2017. In addition to the other issues that the parties must address in the joint case management statement, the parties shall

18

address whether Defendants CDCR and Abreu must file an answer to the 2AC.

IT IS SO ORDERED.

Dated: September 15, 2017

CLAUDIA WILKEN
United States District Judge

19